R. E. ALEXANDER, ADMINISTRATRIX, AND OTHERS, APPELLANTS, VS. JAMES M. KILPATRICK, APPELLEE.

Judgment was recovered in 1868 against A., before the adoption of the present Constitution and exemption laws, and after this Constitution took effect an execution was issued upon the judgment and personal property levied upon of the value of $680, which was claimed by A. as exempt and released from levy. Afterwards the same property was again levied upon and A. died. The widow and heirs now claim the exemption. *Held,*

1. That the exemption cannot be allowed under the Constitution of 1868 to a greater amount than was allowed by the law of 1866 in force when the judgment was obtained.

2. That although the right of the heirs to claim an exemption after the death of the debtor was not expressly recognized by the law of 1866, yet it may be allowed under the Constitution of 1868, no right to subject the property so exempted having existed prior to the adoption of the Constitution of 1868, and therefore no right of the creditor being impaired by extending the exemption to the heirs.

Appeal from the Circuit Court of the Second Judicial Circuit for Jefferson county.

The opinion of the court contains a statement of the case.

*S. Pasco* for Appellants.

The appellant claims, 1, a homestead or exemption under

the Constitution of 1868 and the laws thereunder, (Bush's, Dig., 328–30,) as allotted to her husband in his lifetime; or if those proceedings are void, as alleged, the exemptions allowed under the act of January 16th, 1866, or under whatever other act is in force governing such cases, (Thomp. Dig., 185, 186, 201;) 2, her dower, her year's support for herself and family, and the allowance made to widows in cases where estates are insolvent; 3, the right as administratrix to settle her husband's estate under the law of 1853, (Bush's Dig., 55-7,) without interference from the sheriff by virtue of an execution.

In support of these claims, the following propositions are submitted:

1. The proceedings under the homestead and exemption laws (Bush's Dig., 330, sec. 16) cannot be attacked collaterally. The remedy is by bill in equity.

2. If the said proceedings can be here attacked, it is urged that the present case does not fall under the general rule as laid down in Gunn vs. Barry, 15 Wall., 610, but see 623. 1 How. U. S., 315-16; 4 Wall., 553; Cooley's Con. Lim., 287-8, and cases there cited. Nearly all of the property would have been exempt under the law of 1866, (Bush's Dig., 326-8,) and the appellee had at the time of the adoption of the present Constitution no proper lien, by virtue of his execution, upon any of the property included in the levy of the sheriff and the return of the commissioners. The two mules, it is admitted, were acquired after that time by the intestate; the corn being an annual product must have been raised since then, and the rest of the property was exempt under the law of 1866. 5 Kan., 239, 247; 9 Ib., 466, 475; 25 Ill., 221-23; 21 Ib., 104-5.

3. If these exemption proceedings were void under the statute of 1869, they were good under the statute of 1866, (Bush's Dig., 326,) and in either case the title of the property in dispute was preserved in the claimant, Alexander, in full force as long as he lived.

The law of 1866 was substantially complied with, and if the intestate or the officer made a mistake as to the remedy, it could have been corrected at any time before an actual sale, and the widow and orphans should have the same advantage as if it had been corrected, for equity will regard that as done which ought to have been done. The steps taken in the exemption proceedings were all prior to the levy under which the appellee now claims, and the levy should be subject thereto. 1 Cooley (Mich.,) 369 ; 3 Ib., 488, and cases there cited.

4. Upon the death of the said claimant of exemptions, the widow's rights and claims under the statutes relating to the settlement of estates have preference over all others.

The widow claims the following as her proper allowances for herself and children :

In all cases where the estate shall be insolvent, property to the appraised value of two hundred dollars, in addition to her implements of industry, clothes, &c. Bush's Dig., 55, sec. 23.

One year's provision for herself and family. Bush's Dig., 294, sec. 8.

One-third part in fee simple in the personal estate of her late husband, or a child's part in lieu thereof as dower. Bush's Dig., 293, sec. 2.

These claims are allowed to the widow by express provision of law. The first applies expressly to insolvent estates. The second is granted without any restriction and applies in all cases, whether the estate is solvent or not. It is a provision made by the supreme power of the State for the widow and orphan, suggested alike by a wise policy and the dictates of humanity. The third is a claim highly favored, as Lord Bacon says it is the common by-word in the law that the law favors three things, life, liberty and dower. Coke Litt., 31 ; Lamb. on Dow., 13, 138-9 ; 5 Fla., 354. The general rule is that the widow takes her dower discharged of all incumbrances created during the marriage.

1 Bishop on Married Women, sec. 328. Under the common law it is even protected from distress for a debt due to the crown, the first in the order of payment under the common law. Lamb. on Dow., 82; 2 Bacon's Abr., Dower G., 387. Our own statute says that this claim "shall have preference over all others," (Thomp. Dig., 185, sec. 2,) and the judicial interpretation of this clause in the court of appeals of the territory of Florida gives the widow her one-third, "irrespective of the claims of creditors at large." Fla. Ct. of Appeals. Jan. T., 1834; Thomp. Dig., 185. And again, this court has declared that "the right of dower or dower interest of the widow in the personal estate of her husband are preferred rights; her claim stands higher than that of a creditor." 10 Fla., 284. The court further states "that the widow has an inchoate title to such personal property as the husband might die possessed of." Ib., 286. This view is sustained by other authorities, and it is ruled that "her dower is not derived out of the heir's estate, nor supported by it, but out of the estate of the husband continued by fiction of law after his death." 1 Bish. on Mar. Wom., 239, 355; 1 Hayw. N. C., 188-9. The law of 1864 is not referred to in support of the widow's allowances, because that grants certain specific property in kind. It shows, however, the kind intention of the law and the spirit of its policy. Bush's Dig., 293, sec. 5.

5. The allowance of the claim of the execution creditor against the widow and administratrix will disturb the order of priorities as laid down by the statutes and the authority of the administratrix over the estate of her intestate.

The law as explained by a decision of this court (11 Fla., 111) has established the following order for the payment of debts where an intestate is insolvent: 1, Expenses of administration. 2, Funeral expenses. 3, All other claims pro rata, except that all liens created during the lifetime of the decedent are to be respected. Bush's Dig., 56, sec. 28.

In 11 Fla., 111, 124, the court favored the idea that liens created in the lifetime of the decedent are to be paid without reference to the preferred claims, but there the point was not before the court and does not seem to have been considered, and there was no necessity for deciding the question. It is now respectfully urged that the law of 1853 lays down a positive rule, and though the liens created in the life time of a decedent are to be recognized, they must under this rule be subordinate to the two classes of claims which are preferred. The execution creditor should be bound by the act of 1853, as well as all other creditors. He has to comply with the statute (Bush's Dig., 63, sec. 19) requiring the presentation of claims within two years. He cannot coerce his claim until six months after the decedent's death, and why is he not affected by all other statutes upon the same subject? In the words of a recent decision of the court, (13 Fla., 618-19,) "there can be no shadow of warrant or authority for directing the assets of an insolvent estate to be handed over to one or more creditors, to the exclusion of all others." The whole estate must be distributed under the statute, not merely the portion remaining after the satisfaction of the liens. The administrator's oath and bond cover the entire estate, regardless of the liens, and the law must intend that he shall administer the whole estate; but if the sheriff can seize a part under an execution, he is pro tanto the administrator, the jurisdiction is divided and confusion and embarrassment must often be the result. In this case it is admitted that if the lien of the execution prevails, the funeral charges and costs of administration cannot be paid out of the decedent's estate.

The only argument urged in the court below against this position was that the levy of the execution in the lifetime of the intestate "changed the property." 29 Car. 2, chap. 3, sec. 16. The common law of England is here in force in regard to executions. 2 Bacon's Abr., 74, tit. Execution D; 2 Tidd's Prac., 1038. Under it a lien is acquired by the

creditor as soon as it goes into the sheriff's hands, but there is no change in the property until "execution executed," which includes levy and sale. 5 Fla., 278; 2 Ib., 438; 11 Ib., 123; 4 Ib., 134. The levy is only a preliminary step necessary to the final completion of the work, but the property still remains the defendant's until after the sale; his title is not divested till then. 3 Howard's U. S., 119; 5 Dana, 274. This view is upheld by the highest authority elsewhere, and is declared to be the law in this State, and, if so the property was a part of Alexander's estate at the time of his decease and is subject to the dower claim of his widow. 2 Fla., 438-9. A statutory lien is declared to be as binding as a mortgage, (12 Wheat., 177,) but surely it is not more so; and if the intestate had mortgaged the property to the appellee in his lifetime, the widow's rights would not be barred unless she had joined in the mortgage. Foreclosure and sale of mortgaged personal property in the lifetime of the mortgagor can alone bar the widow's rights of dower after his decease. Bush's Dig., 611-12. The cases which sustain apparently a different view in regard to the force of the execution have, we urge, originated from a misconception of the meaning of the word levy as used by the older writers. It includes with them the seizure and sale of the property. To levy an execution is defined, (2 Bouv. Law Dic., 34,) to raise or levy so much money on execution. Later writers generally use it as including simply the seizure.

But if it is claimed that the levy has extinguished the debt, and that the same ought not, therefore, to be disturbed, we reply that the record shows a prior levy upon five bales of cotton, and if a levy satisfies a writ the appellee has no authority for any further proceedings after dismissing his levy upon the cotton, which the record shows was done by the execution creditor.

A recent decision of the Supreme Court of Georgia, not yet reported, in a case resembling the present, lays down

the following rule: "Where a homestead was set apart under the act of 1868, and was afterwards levied on to satisfy a *fi. fa.* founded on a debt contracted before 1868, the husband, or on his failure the wife, may apply for an exemption under the law as it stood before the debt was contracted, and the exemption, if obtained before the sale under the levy, is a valid exemption against the judgment so levying."

*A. L. Woodward, Sr.*, on the same side.

I. The question before the courts is not as to the constitutional exercise of legislative power over the subject-matter of exemption of a debtor's property, but as to the abuse of the power. 2 Minn., 89, 90, 95, 97, 102; 11 N. Y., (1 Kern.) 281.

Courts are always liberal in the construction of exemption laws, in accordance with their spirit, to secure to their beneficiaries the enjoyment of the right to the property exempted. 7 Texas, 13, 19-22; 18 Ill., 194-9; 21 Ib., 178.

The exemption act of 1866 is still in force, and not superseded by the Constitution, Art. X. Exclusively in view of future contracts, and eminently conservative in its spirit, it guards with scrupulous care all vested rights and antecedent obligations. Bush's Dig., 328, sec. 7, and 330, sec. 18.

Its validity, clear and unquestionable, is sustained by the highest authority. 1 How., 311.

The recent decision of the Supreme Court of the United States, in the case of Gunn vs. Barry, (15 Wall., 593,) would not affect appellant's claim under the act of 1866, though held fatal to her husband's by the circuit court under the Constitution of 1868, yet, it is submitted, at least doubtfully applicable even there. 1. The decision, assuming the premises, blends the remedy with the obligation. 2. There the law was invoked in exemption of a homestead of great value against a prior judgment creating a lien. 3. The act, an-

ticipating the decision, is based upon its principles. Two things, each equal to a third, are equal to one another.

II. The act of 1866 vests in every actual housekeeper the right of exemption to property of limited amount, and extends it to the widow and infant children of the owner. Bush's Dig., 326, sec. 2, and 329, sec. 13.

This right may be asserted by the widow, either in consummation of a proceeding instituted by her husband in his lifetime, or by one *de novo* of her own.

Dower is no bar to the widow's right of exemption in the property of the estate as against creditors, and here the interests of the widow and the heirs concur. 41 Ala., 627; 42 Ib., 315.

Nor does exemption exclude the widow's rights under pre-existing laws as to the administration of estates. The right of exemption is distinct and independent in its subject-matter. It relates to property *eo nomine, per se,* and has no reference to allowances under other laws, which it neither supersedes nor includes, being essentially remedial and cumulative in its character.

A party has the right to amend his petition to allege a new fact in support of his claim to exemption, even after trial and verdict against him. 45 Ga., 552.

So a party may amend his petition, claiming enlarged exemption under a new law. 45 Ala., 126-34. And, *e converso,* failing under the new law, may he resort to the old, standing on the same subject-matter unrepealed.

Nor is the right of exemption lost by the repeal of the law, where proceedings have been taken under it.

And when the new law has been declared invalid by judicial authority, surely a party claiming under it may prosecute his claim under a former law still subsisting and in force.

The right of exemption is not lost by levy on property exempted, though the claimant may have neglected or re-

fused to make the selection before. Bush's Dig., 329, sec. 14 ; 42 Ala., 295.

It is, therefore, respectfully submitted whether it be not still competent to appellant to prosecute her claim to exemption in this estate under the act of 1866 on the subject, this court remanding the cause with appropriate instructions ; or whether the court will not give such decree in the premises as the court below ought to have rendered.

*Scott & Clarke* for Appellee.

1st. It is contended by appellants that the widow is entitled to her dower or share in the personal property levied on, and to a year's support out of the same for herself and minor children, or $200 worth of said property, the estate having been declared insolvent. The first is claimed under section 2 of act of November 7, 1828, Bush, 293. The second under sections 14 and 15 of act of November 20, 1828, Bush, 54 and 5. By an examination of these acts it will be seen that these allowances are made out of the property of which the husband dies seized and possessed, and which comes to the hands of the administrator to be administered. The sheriff having levied upon the property, Alexander was disseized and not entitled to the possession of the property at the time of his death. The sheriff held it in trust to satisfy the judgment of Kilpatrick. The property was altered by the levy and Alexander had no control over it. In support of this position I cite 4 Fla., 134 ; 1 How., (Miss.) R., 42 ; 4 Mass., 402. The property becomes changed after execution executed or levied. 3 Bacon's Abridgment, 705 ; 1 Wash. C. C. R., 37 ; 1 Pet., 441. After goods are seized by a sheriff he may maintain trespass or trover. Sewell on Sheriffs, 252. The widow as the administratrix stands in the place of the intestate and is substituted for him. 1 Williams on Ex's, 406. If her intestate could not claim possession of this property neither can she as his representative.

2d. It is also contended that Alexander in his life-time

claimed an exemption, and that the claim and proceedings were a substantial compliance with the statute of 1866, and exempted this property under that act. The return of the sheriff on the execution, shows that the claim was under the Constitution of 1868, and the statute of 1869. The act of January 16, 1866, (see pamph. 44, 45 and 46, sections, 1 to 7,) requires the defendant in execution as a condition, precedent to claiming the exemption provided for, "to make affidavit and establish by sufficient testimony that he has made a faithful and complete statement of all his property in trust or otherwise," &c., &c. And that "three disinterested house-keepers shall value the property, which valuation shall be sworn to and signed by them." The record does not show that this or any part of it was done. But it *does* show, that Alexander claimed $680 worth of personal property as exempt, when he was entitled at most to only $300 worth under the act of 1866, thereby showing conclusively that the claim was made and intended to be made under a law providing for a larger exemption—the statute of 1869. But even if the proceedings taken should have entitled him to the benefit of the exemption allowed under the statute of 1866, still it appears there would remain, after allowing the exemption when it was claimed, sufficient property to satisfy Kilpatrick's judgment, it being less than $300, and there being $680 worth of property.

3d. It is contended by appellant that this property is exempt under the Constitution of 1868 and statute of 1869. The record shows that the judgment was entered, the execution issued and placed in the hands of the sheriff prior to the adoption of the Constitution of 1868. Such being the case, we understand it to be well settled that our State Constitution and the statute of 1869, in pursuance thereof, so far as they provide for an increased exemption of property from liability for contracts entered into, and liens acquired prior to the adoption of said Constitution, are void

as being in conflict with the section of the Constitution prohibiting any State from enacting a law impairing the obligation of contracts. In support of this we cite 15 Wall., 610; 16 ib., 314; 16 ib., 678; 13 ib., 646; 4 ib., 535.

RANDALL, C. J., delivered the opinion of the Court.

This was a case submitted " without action " under the provisions of the Code, (section 308,) to the Circuit Court for Jefferson county.

Kilpatrick claims that all the personal property of a defendant is liable to be levied upon by virtue of an execution issued upon a judgment rendered in April, 1868, while the exemption act of 1866 was in force, and before the adoption of the more liberal exemption in the Constitution of 1868. Mrs. Alexander, as administratrix, and in behalf of herself as the widow, and in behalf of her children, heirs of the now deceased debtor, claims, 1—that she is entitled to administer the property so levied on; 2—that she and the children as heirs are entitled to an exemption of the property under the Constitution of 1868, or, if not, then under the act of 1866.

It has been held in several cases by the Supreme Court of the United States, and very pointedly in the recent case of Gunn vs. Barry, 15 Wallace, 610, that the remedy provided by law at the time of making a contract enters into and forms a part of the contract, and that no State has the right to impair the remedy by a sweeping exemption, as that would impair the obligation of the contract.

In the case at bar the plaintiff had his judgment before the Constitution of 1868, and was therefore entitled to make his money out of any property not exempted under the law of 1866. The provisions of the State Constitution, therefore, as they would exempt all the property of the judgment debtor, are in violation of the Constitution of the United States, so far as they seem to extend the more liberal exemption of

property from levy and sale upon a judgment obtained before its adoption.

The Constitution of 1868, and the acts of the legislature on the subject of exempting property from levy and sale under execution, do not, either expressly or by implication, repeal the law of 1866, which confers a more limited exemption, for we cannot infer that it was the intention of the legislature to abrogate all right to claim an exemption as to then existing indebtedness, unless they expressly so declare, which they have failed to do. The Constitution of 1868 intended to enlarge the privilege of claiming exemptions and not to deprive parties of it where it already existed in a more limited provision. The defendant in execution had, therefore, in his life-time, a right to claim the benefit of the exemptions allowed by the law of 1866, Chapter 1481.

But it is claimed that the defendant in the execution did not comply fully with the law of 1866, and therefore was not entitled to its benefits. It is true that he did not comply with that law as strictly as he might have done, but it seems that he did claim an exemption in substantial form; made oath to an inventory of "the whole of his personal property;" that it was appraised by three disinterested persons selected by the sheriff, and the sheriff then released the property as exempt from levy. What more could be required of the defendant after his object was accomplished?

After the levy was discharged, the sheriff again levied upon it or the greater part of it, and within ten days thereafter the defendant died without having *again* claimed an exemption.

But whether the proceeding in the first instance was, or was not, a strict compliance with the requirements of the law, we do not think the widow and heirs of the defendant are deprived of the right to claim the exemptions allowed by the act of 1866. It may be said that by that law the right to claim an exemption in personalty did not survive to the heirs. This is true if that act stands alone, but we are at

Alexander et al. v. Kilpatrick.

liberty to extend the right to them by the third section of
the ninth article of the Constitution of 1868, which provides
that " the exemptions provided for in sections 1 and 2 of
this article shall accrue to the heirs of the party having en-
joyed or taken the benefit of such exemption." The first
section included and enlarged the exemption provided in the
act of 1866, and though we cannot allow the enlarged ex-
emption, as before said, yet we can extend it to the family
of the defendant without infringing the rule of the inviola-
bility of the remedy. When the judgment was recovered it
did not bind the defendant's personal property which he might
claim as exempt, and a legislative act extending the same
exemption to the heirs would deprive him of no remedy
which he had possessed and no right he had acquired. And
in consideration of the humane, as well as the lawful pur-
pose and intent of the framers of the Constitution and laws
in reference to the subject, we are of the opinion that the
heirs of the defendant in the execution may now claim such
exemption as the defendant had "enjoyed or taken" in his
life-time.

The claim of Mrs. Alexander as administratrix cannot be
sustained. The property having been levied upon and being
in the hands of the sheriff, must be subjected to the pay-
ment of the execution, except so far as it may be exempt on
claim of the heirs of the defendant. The death of the debtor
does not change the status of the property levied upon.

The order of the Circuit Court subjecting all the property
in question to sale by virtue of the execution, notwithstand-
the exemption claimed under the law of 1866, is reversed.