R. A. GRAY, Secretary of State, v. ROLAND MOSS.

156 So. 262.
Opinion Filed July 7, 1934.

702

*Cary D. Landis,* Attorney General and *Robert J. Pleus,* Assistant, for Appellant;

*Frank E. Jennings* and *Olin E. Watts,* for Appellee.

*W. H. Poe,* as *Amicus Curiae.*

WHITFIELD, J.—Roland Moss brought his bill of complaint against the Secretary of State in which it is alleged that complainant is a citizen, resident and taxpayer upon real and personal property in Duval County, Florida; that he is the owner and holder of a described bond of Special Tax School District No. 1 of Sumter County, Florida, issued pursuant to Section 17, Article XII of the Constitution of

Florida and the statutes enacted thereunder, Section 735 (593) C. G. L.; that

"The tax which said Article XII, Section 17, of the Constitution of Florida, and said Section 735, Compiled General Laws of Florida, 1927, required to be levied for the payment of complainant's bond is a tax upon all real and personal property within said Special Tax School District No. 1 of Sumter County, Florida, which was taxable under the Constitution and laws of Florida at the time complainant's bond was issued. At said time and at the present time all homestead property as defined by Article X, Section 1, of the Constitution of Florida was taxable under the Constitution and laws of Florida by said State and its political subdivisions up to the full assessed valuation thereof. The power and duty to tax all property within said Special Tax School District No. 1 which was taxable when complainant's bond was issued, including all homestead property up to the full assessed valuation thereof, was a substantial and valuable part of the security pledged by said Special Tax School District No. 1 for the payment of complainant's bond";

"That the total assessed value of all real and personal property in said special tax school district for the last taxable year preceding the filing of this bill is One Hundred Sixty-four Thousand Nine Hundred Eighty-six Dollars ($164,986.00); that the assessed valuation of the homesteads in said district which are assessed at a valuation of not over Five Thousand Dollars ($5,000.00) is an aggregate total of more than Eighty Thousand Dollars ($80,-000.00);

"That the Legislature of the State of Florida at its regular session in the year 1933 proposed the following amendment to Article X of the Constitution of Florida to be sub-

mitted to the qualified electors of the State for ratification or rejection in the general election to be held on the first Tuesday after the first Monday in November, 1934:

" 'Section 7. There shall be exempted from all taxation, other than special assessments for benefits, to every head of a family who is a citizen of and resides in the State of Florida, the homestead as defined in Article X of the Constitution of the State of Florida up to the valuation of $5,000.00; provided, however, that the title to said homestead may be vested in such head of a family or in his lawful wife residing upon such homestead or in both';

"That the said proposed amendment ought not to be submitted to the voters of this State for the following reasons:

"1. Because the said amendment is violative of the Federal Constitution in that it violates the obligation of complainant's contract by substantially reducing the amount of security which existed for the payment of interest and principal on his bond at the time said bond was issued and sold.

"2. Because it violates complainant's contract in that the remedy which complainant had and enjoyed at the time his bond was issued and sold for the collection of interest and principal thereof is materially and substantially reduced and rendered substantially efficacious.

"3. Because the legal and operative effect of said amendment will be substantially different than the purpose and effect contemplated (as shown by the language of said amendment) by the Legislature in submission thereof.

"4. Because the language of said proposed amendment is deceptive and misleading in that it does not convey to the voters its legal and administrative operation and effect;

"WHEREFORE, complainant prays:

"(a) That the said proposed amendment to Article X of

the Constitution of Florida, set out in Paragraph II, Section 8, of this bill of complaint, be, by decree of this Court, declared null and void and unconstitutional;

"(b) That pending this suit, defendant, R. A. Gray, as Secretary of State of the State of Florida, be enjoined and restrained from publishing said proposed amendment and from furnishing the county commissioners of the several counties of this State with copies of said proposed amendment to be posted at polling places and placed on the official ballot to be used at the election to be held in this State on the first Tuesday after the first Monday in November, 1934, in accordance with the provisions of the Constitution and laws of Florida governing the submission of valid constitutional amendments to the electors;

"(c) That on final hearing said interlocutory injunction be made permanent."

The court denied a motion to dismiss the bill of complaint and granted a temporary injunction in accordance with the prayer of the bill. An appeal was taken by the Secretary of State.

The appellant in effect contends that the courts should not enjoin the submission of the proposed organic amendment to the electorate, because it is a law-making function not subject to judicial interference; and that the amendment is not shown to be invalid, but it may legally operate in some matters of taxation, if not in all.

In support of the decree appealed from, the appellee argues that if adopted, the proposed amendment to the Constitution will by its terms exempt homesteads from all taxation and thereby will so reduce the property subject to taxation as to impair the contract obligation of outstanding bonds issued by Special Tax School District No. 1 of Sumter County, and other taxing units in the State, thereby vio-

lating the contract clause of the Federal Constitution, and rendering the proposed amendment inoperative even if it be submitted to the voters and adopted.

: If a duly proposed amendment to the State Constitution does not specifically violate some provision of the Federal Constitution and is not wholly void and inoperative, its submission to the electorate of the State for approval or rejection as required by Article XVII of the Constitution, should not be enjoined, since the courts are not authorized to interfere with the processes prescribed by the Constitution for proposing and adopting amendments to the Constitution, even by controlling ministerial duties incident to the submission of a duly proposed organic amendment, unless it is clear that such amendment would as an entirety expressly, specifically and inevitably violate some command or limitation of the Federal Constitution, thereby rendering the amendment, if adopted, wholly inoperative, and not such an amendment as the Constitution contemplates may be proposed and submitted for adoption or rejection.

If a duly proposed amendment to* a State Constitution might, if adopted at the polls, legally operate in part or under some conditions, a ministerial duty required by law for its submission to the electorate of the State for adoption or rejection as prescribed by the Constitution, should not be enjoined, because in such a case the State has a right to the submission for approval, and if adopted, to the operation of the amendment insofar as it may lawfully be effectuated, and, in such a case, an adjudication of the extent to which the amendment may legally operate, if at all, should not be had before its submission for adoption, since it might not be adopted; and if adopted, its illegal operation in whole or in part upon organic rights might be waived or be obviated by other laws or by controlling circumstances. In other

words, if a duly proposed amendment to the State Constitution does not in terms so plainly, palpably and inevitably violate some command or limitation of the Federal Constitution as to make the text of the proposed amendment necessarily void as an entirety, its submission to the voters should be enjoined, as the State has a right to its operation to the extent that it does not violate paramount law, if it is adopted. See Gray v. Winthrop, this day decided.

The State may regulate the subjects of taxation and may authorize exemptions of property from taxation; and an amendment to the State Constitution may, if so intended, modify an existing provision of the State Constitution; but an amendment to the State Constitution cannot modify the operation of any provision of the Federal Constitution. While an amendment to the State Constitution exempting homestead property from taxation in addition to the exemptions already allowed by the Constitution may not legally be restrained by the provision of the State Constitution requiring a uniform and equal system of *ad valorem* taxation, amended Section 1, Article IX, or by the State organic provision forbidding the enactment of laws impairing the obligation of contracts; yet such an amendment to the State Constitution exempting specified homesteads from taxation, may be restrained in its operation, if it violates the provision of the Federal Constitution which forbids a State to pass any law impairing the obligation of contracts, or if it denies the equal protection of the laws or violates any other applicable provision of the Federal Constitution. See Gray v. Winthrop, this day decided; Section 2, Declaration of Rights, Constitution of Florida; Article VI, Par. 2, Constitution of the United States.

The due submission of a legally proposed amendment of the State Constitution to the electorate for adoption or re-

jection, should not be enjoined when such amendment relates to a matter of State authority and does not expressly violate a specific command of the Federal Constitution. The amendment, if adopted, will be subject to controlling provisions of the paramount Federal law; and proper deference to the action of the legislative department in the exercise of its exclusive function of proposing amendments to the State Constitution, and also proper consideration for the electorate of the State, require the courts to refrain from interference with the due submission to the voters for the adoption or rejection of a *duly proposed* amendment to the Constitution, even though the amendment, if adopted, may be shown by appropriate parties, allegations and proofs or admissions to be legally inoperative where it would violate controlling Federal law, the amendment not being void on its face.

The words, "there shall be exempted from all taxation," as used in the proposed amendment to the State Constitution, mean "from all taxation" when not restrained by the paramount Federal Constitution to which the proposed amendment is and is intended to be subject, just as though the paramount law had been expressly made a part of the amendment. Gray v. Winthrop, decided this day. See Osborne v. State, 33 Fla. 162, 164 U. S. 650.

The proposed amendment exempting homestead real estate from taxation, if adopted, *might* not be restrained by the superior Federal law, as to taxation for governmental operating expenses and as to future governmental contract obligations, though it may be legally inoperative as to taxation for existing contract obligations. When such an amendment has been duly proposed and, if adopted, would be legally operative in part, its submission to the electorate for adoption or rejection should not be enjoined, since, if

the amendment is adopted, it may be restrained to its proper field of operation, and the State has a right to its *legal* operation, should it be adopted, to the extent that it is not duly shown to violate Federal organic law.

Section 17, Article XII, of the State Constitution, added by amendment in 1924, is as follows:

"The Legislature may provide for special tax school districts to issue bonds for the exclusive use of public free schools within any such special tax school district, whenever a majority of the qualified electors thereof who are freeholders shall vote in favor of the issuance of such bonds, but no bonds shall be issued hereunder which shall exceed, together with the existing indebtedness of such special tax school district 20 per cent. of the assessed value of the taxable property of such district according to the last assessment for State and county purposes prior to the issuing of such bonds. Any bonds issued hereunder shall become payable within thirty years from the date of issuance in annual installments which shall commence not more than three years after the date of issue. Each annual installment shall be not less than three per cent. of the total amount of the issue. Whenever any such special tax school district has voted in favor of the issuance of such bonds, a special tax for the payment of the interest on said bonds and the principal thereof as the same shall become due and payable, shall be levied on the taxable property within the district voting for their issuance in accordance with law, providing for the levy of taxes, and such tax shall not be applied to any purpose other than the payment of the principal and interest of said bonds. Additional Section, Joint Resolution 76, Acts 1911, adopted at general election, 1912. Amended, Senate Joint Resolution 333, Acts 1923; adopted at general election, 1924."

This organic provision authorizes the issuance of bonds by special tax school districts, and provides that when such bonds have been issued, a special tax for the payment of the bonds "shall be levied on the taxable property within the district." The words, "taxable property," relate to the time when bonds are issued; and if the proposed amendment to the Constitution exempting homesteads from taxation here considered, would, if adopted, operate to modify the quoted provision in Section 17, Article XII, yet insofar as the proposed amendment may operate to impair the contract obligation of the bonds, it would be restrained by the provision of the Federal Constitution which is the paramount law forbidding a State to pass any law impairing the obligation of contracts.

"The prohibition in the Constitution of the United States against the passage of law impairing the obligation of contracts applies to the Constitution, as well as to the laws, of each State." New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, H. N. 4. See also 12 C. J. 988. See 14 Fla. 239; 18 Fla. 512.

The obligation of bonds heretofore issued by special tax school districts under amended Section 17, Article XII, of the State Constitution cannot legally be impaired by the operation of the proposed amendment to the Constitution exempting homesteads of resident citizens of Florida from all taxation other than special assessments for benefits, if such exemption violates the contract clause of the Federal Constitution.

All statutes, whether so expressed in the Acts or not, are subject to controlling provisions of both the State and the Federal Constitution; and State constitutions and amendments thereto are subject to applicable prohibitions and limitations of the Federal Constitution, the supreme law of the

land, which all *officers* and all *electors* are required to take an oath to support. See Paragraphs 2 and 3, Article VI, Federal Constitution; Section 2, Declaration of Rights; Section 2, Article XVI, Section 3, Article VI, Florida Constitution.

Assuming that it may be said with confidence that if the proposed amendment be adopted at the polls and an increased tax be imposed only upon the non-exempt property, it will not in any event produce revenue sufficient to pay governmental expenses and the existing bonded debts; yet it cannot be said the State will not through appropriate legislation provide from other sources of taxation the same amount of revenues taken from the taxing units of the State by the organic exemption of homesteads from taxation, when the State has by its Constitution or by legislative enactments established such taxing units and authorized them to incur indebtedness, and then expressly required a tax to be levied on all property then subject to taxation, sufficient in amount to pay the bonded debts as they mature. The Constitution had prescribed the rule of property taxation and of exemptions from taxation when the indebtedness was incurred under the several statutes. The State should not be held to intend to impair the obligation of contracts it authorizes its taxing units to incur, since that would violate its own Constitution as well as the paramount Federal Constitution to which the State Constitution pledges the paramount allegiance of every citizen. "The right to alter or amend" the State Constitution is by the Constitution itself expressly made subject to the supreme Federal law. Sec. 2, Declaration of Rights, Florida Constitution; Par 2, Article VI, Federal Constitution.

If other revenues be provided sufficient to meet debt requirements, the contract obligations will not be impaired in

practical effect. If sufficient revenues are not supplied to compensate for the exemption of homesteads from taxation, the exemption cannot legally operate to impair statutory contract obligations which are by the Federal Constitution forbidden to be impaired by any State law.

As amended Section 17, Article XII, of the Florida Constitution, expressly provides for the levy of *ad valorem* taxes on the taxable property within a district for the payment of the principal and interest on bonds duly issued by a special tax school district, and as amended Section 9 of Article XII provides that all appropriations by the Legislature to the county school fund shall be used "solely for the support and maintenance of public free schools," it may be that under the Florida Constitution the bonds issued by special tax school districts can legally be paid only by *ad valorem* taxes levied in each such district as is expressly required by amended Section 17 of Article XII of the State Constitution.

If this be so, the contract obligation of the indebtedness of such special tax school districts will inevitably be violated if the proposed organic amendment making homesteads exempt from taxation, be adopted at the polls, thereby making the amendment inoperative at least to such special tax school districts.

As the amendment, being restrained in its meaning by the superior Federal law, might be legally effective for some purposes, if adopted, its submission to the voters for their approval should not be enjoined. If adopted, the amendment may by due procedure be shown to be invalid of and to the extent that it operates to violate any controlling provision of the dominant Federal Constitution, including the Federal organic mandate that "no State shall * * * pass any * * * law impairing the obligation of contracts." See

Edwards v. Kearzey, 96 U. S. 595, 24 Law Ed. 793; 12 C. J. 1076. See also Kener v. La Grange Mills, 231 U. S. 215, 34 Sup. Ct. 83, 58 Law Ed. 189; Bank of Minden v. Clement, 256 U. S. 126, 41 Sup. Ct. 408, 65 Law Ed. 857; Mobile v. Watson, 116 U. S. 289, 6 Sup. Ct. 398, 29 Law Ed. 620; Humphreys v. State, 108 Fla. 92, 145 So. 858; Smith-Courtney Co. v. Bd. Road Comm'rs (N. C.), 108 S. E. 443; Alexander v. Kilpatrick, 14 Fla. 450, 103 U. S. 358; 215 U. S. 170; 13 Fla. 451; 15 Wallace 610; 87 Am. Dec. 458.

Reversed.

DAVIS, C. J., and TERRELL, J., concur.

ELLIS and BROWN, J. J., concur in the conclusion.

BUFORD, J., dissents.

DAVIS, C. J. (concurring).—I agree to the conclusion that the proposed "homestead exemption" amendment should not, since its effectiveness and validity may be more deliberately considered and determined after its adoption (if it should be adopted), now be enjoined and thereby kept from being considered and voted upon by the electors, merely because of the small amount of tax money that will be expended in its publication.

But I think that this Court, now that the matter is before it, should construe the proposed amendment in its relation to the Constitution of the United States, and should here and now hold, as it must assuredly hold at some later time if the objection is again renewed and brought before it, that nothing in the said proposed constitutional amendment can exempt homesteads from that tax liability which has already been pledged in favor of creditors who are entitled to look to Section 10, Article I, of the Federal Constitution to keep in force and effect all provisions of law that they were entitled to look to when their obligations were made.

One of these provisions of law was a provision of Section 1 of Article X of the Florida Constitution itself, which says: "But no property (meaning the homestead provided for in Article X) shall be exempt from sale for taxes and assessments, etc." This was but another way of saying, "But all homestead property shall be subject to taxation and assessments and sale for taxation and assessments" under Section 1 of Article X of the State Constitution construed in relation to other sections relating to taxation. It is plainly beyond the power of either the Legislature or of the people of Florida to adopt any measure, constitutional amendment or otherwise, which will so alter Section 1 of Article X in its meaning as to make it in effect read, "But no homestead property, *except that portion under* $5,000.00 *in valuation,* shall be exempt from sale for taxes and assessments, etc.," and thereby do what the Supreme Court of the United States has said cannot be done in violation of Section 12 of Article I of the United States Constitution, that is, so change the existing tax laws of the State as to "postpone," "retard," "hinder" or "embarrass" tax collections pledged for debt payments, even though complete frustration is neither attempted nor accomplished by the measures adopted. Louisiana v. New Orleans, 102 U. S. 203, 26 L. Ed. 132.

The proposed constitutional amendment now under consideration in this case, if adopted, must be considered as if it read:

"Section 7. There shall be exempted from all taxation, other than special assessments for benefits, * * * the homestead as defined in Article X of the Constitution of the State of Florida up to the valuation of $5,000.00; provided, however, that the title to said homestead may be vested in such head of a family or in his lawful wife residing upon such

homestead or in both, and provided further, that all homesteads shall remain liable to taxation and assessments and sales for taxation and assessments with respect to outstanding obligations which are in force when this amendment is voted upon."

This Court is bound by the provisions of the Constitution of the United States and the decisions of the Supreme Court of the United States interpreting it. The case of Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793, plainly requires the proposed amendment to be construed as inapplicable to existing obligations in force at the time it is voted upon.

TERRELL, J., concurs.

BUFORD, J. (dissenting).—It is said in the majority opinion, "If a duly proposed amendment to the State Constitution does not in terms so plainly, palpably and inevitably violate some command or limitation of the Federal Constitution as to make the text of the proposed amendment necessarily void as an entirety, its submission to the voters should not be enjoined, as the State has a right to its operation to the extent that it does not violate paramount law, if it is adopted." To this, I agree.

The proposed amendment would, however, exempt from taxation the homestead of one who is a citizen *and* resident of this State but not that of a resident who happens not to be a citizen of the State, although in all other respects their situations and conditions are identical. This is not equal protection of the law. It is, therefore, violative of Section 2 of Article IV and of the Fourteenth Amendment to Section 1 of the Federal Constitution.

In application it must further violate the Fourteenth Amendment to the Federal Constitution. "A" owns a store building valued at $4,000.00. "B" owns a residence in the same city block valued at $4,000.00, which he rents, or hopes

to rent. "C" owns a residence in the same block of the same value which he uses as a home for himself and family. They are all freeholders. A bond election is held. Each freeholder in the taxing district votes on the question of issuing bonds. The bond issue is authorized. The real estate of "A" and "B" is taxed to pay the bonds. The real estate of "C," merely because of the use to which it is subjected, is exempt from the tax. This is not equal protection of the law.

Much could be written and many authorities cited in pointing out other fatal infirmities of the proposed amendment, but as those above mentioned so obviously destroy the validity of the proposal, it becomes unnecessary to discuss other defects and to cite authorities in support of the conclusion that the proposed amendment if adopted by a vote of the electors would be entirely inoperative. It, therefore, follows that the expenditure of public funds incident to the useless publication should be enjoined.

Therefore, I think the order appealed from should be affirmed.

ELLIS, J. (concurring).—The proposed amendment to Article X of the Florida Constitution is correctly copied in the opinion of Mr. Justice WHITFIELD in the companion case to this entitled Gray as Secretary of State v. Winthrop.

The proposed amendment is to the Homestead and Exemptions Article of the Constitution and is designed to exempt to every head of a family who is a citizen of and resides in this State from all taxation, except special assessments, the homestead as defined in Article X up to the valuation of five thousand dollars.

In other words, whereas under the Homestead and Exemptions Article of the Constitution there is now exempt to the head of a family residing in this State from forced

sale under process of any court the homestead as therein defined, the proposed amendment is designed to further exempt that homestead up to the value of five thousand dollars from all taxation except for special assessments for benefits.

Under the Constitution as it exists now the homestead of the head of a family residing in this State as defined in the Constitution is exempt whatever may be its value from forced sale under court process to satisfy a private debt. The proposed amendment is designed to further exempt such homestead up to the value of five thousand dollars from public debt or taxes.

Why the people of the State of Florida may not have such a Constitution if they desire it is not shown by any brief or argument in the two cases before this Court now being considered. Indeed it is doubtful if the able counsel who appeared in this case in opposition to the will of the people as expressed by the resolution adopted by the Legislature can find in their store of legal technicalities or their fund of legal and political information any formula, rule or principle of even exiguous strength or proportions for such an explanation.

The argument against the submission of the proposed amendment rests upon the hypothesis that the holders of certain county, municipal or district bonds may find that the revenue-producing capacity of the debtor community will be so reduced as to impair the ability of the creditors to enforce their claims against some city, county or district growing out of bond issues by such communities and held by the purchasers of such bonds.

When the bondholders are confronted by any such condition and it is made to appear that the exemption interferes with the obligation of the contracts for debt payments

held by them it will be time to decide whether the exemption is effective to exempt the particular property from its due proportion of taxes for debt service imposed upon the homestead property by the bond issue.

It may be admitted for the argument that a bond issued by a taxing unit of the State for money borrowed constitutes a contract between the community issuing the bond and the owner of it and that the taxing powers of the community shall be exerted to raise funds sufficient to repay the loan, but it by no means follows that because a certain class of theretofore taxable property is by the proposed amendment exempt from taxation to a homestead owner that such exemption obstructs, hinders or impairs the debtor community or district in its revenue-collecting ability to the point where the obligation of the creditor's contract represented by his bond is *ipso facto* impaired or the value of his contract lessened. The assumption is purely gratuitous as *non constat,* but the revenues derived from taxes on other property are ample to care for all debt service.

A city or town may at any time destroy the balance of its budget by its seemingly unrestricted and unreviewable power of increasing its so-called necessary governmental expenses and super-municipal and wasteful extravagances, and then set up the impairment of its revenue-collecting capacity for debt service by the passage of the amendment, but such arbitrary authority if, indeed, any such authority exists in law, is not a superior power to that of the people in their sovereign capacity and power to adopt a Constitution exempting to a homestead owner his homestead to a reasonable value from all taxation.

There is no political revisory power in the Court, and it is going far afield in that direction when the Court undertakes to restrain the people of a State from adopting a Constitution exempting a certain class of property from tax-

ation when such proposition does not upon its face violate some delegated authority which the State has granted by the Federal Constitution to the Federal Government.

The case of Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793, was one in which it was held that a constitutional exemption of certain personal and real property to the owner of a homestead adopted after a debt had been contracted by the owner of the property when such property was subject to sale under judicial process to satisfy the debt did not protect the property against sale to satisfy the debt. The principle applied was that a remedy subsisting in a State when and where a contract is made and is to be performed is a part of its obligation and any subsequent law of the State which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution and is void.

Assuming that the principle is applicable to the holders of bonded indebtedness issued by certain counties and municipalities and taxing districts and in a given case the proposed exemption from taxation would not be effective in the particular county, municipality or district whose revenue would be so weakened as to impair and lessen the value of its outstanding bonds, it would nevertheless be effective in all other counties, municipalities and districts which have no outstanding contractual obligations which could be impaired or lessened by such exemption.

It is a curious doctrine which prevents the people of a State from having a Constitution such as proposed because one town or city or taxing district in the State may be so overburdened with debt as that the exemption would impair its income from taxes for debt service while the remaining cities, counties and districts of the State would be

unaffected by such diminution of its revenues so far as its public debt is involved.

Many bonds were issued in this State by cities and towns, counties and taxing districts, prior to the general election of 1934 when the Constitution provided that the Legislature should prescribe such regulations as "shall secure a just valuation of *all* property both real and personal except such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes." Yet at the general election in 1924 the people adopted an amendment to the Constitution empowering the Legislature to provide a special rate on intangible property and that it should not exceed five mills on the dollar of the assessed valuation of such property.

It might just as reasonably have been said in that matter that the singling out of and separating of that particular class of property from all property real and personal and favoring it with an exemption from taxes above a rate of five mills on the dollar was a discrimination in favor of that species of property and an impairment of the revenue-collecting capacity of the various cities, counties and districts to the disadvantage or embarrassment of their creditors and a lessening of the value of their contracts, but no protest was heard on that score either from the homestead owner or the people whose holdings of intangible securities were nil or at least negligible, while as to the owner of such species of property with its interest-bearing and dividend-bearing feature the amendment was presumably wholly acceptable.

I agree that the injunctions should not have issued and the order allowing them should be reversed because the adoption of the proposed amendment is a political matter solely within the judgment of the people as to its wisdom

 

and expediency, because the question presented is not a justiciable one as it is purely speculative and that the Court's interference is equivalent to a judicial revision of a proposed Constitution. In none of those matters do I conceive that the Court has any power to direct, control or modify the will of the people as expressed by their chosen representatives acting in the capacity of agent of the people in the proposition to amend the Constitution.