CITY OF TAMPA, and Tom C. Keller, as City Tax Collector and Treasurer, v. TAMPA SHIPBUILDING & ENGINEERING COMPANY.

186 So. 411.

En Banc.

Opinion Filed January 31, 1939.

*Alonzo B. McMullen* and *Ralph A. Marsicano,* for Appellants;

*Herbert S. Phillips* and *B. L. Cooper,* for Appellees.

THOMAS, J.,—Appellee, Tampa Shipbuilding & Engineering Company, filed a bill of complaint against the City of Tampa and Tom C. Keller, tax collector and treasurer of the city, seeking an injunction against the collection of taxes on certain property on which was erected in the years 1934, 1935, and 1936 a "plant designed and intended primarily for the building and construction of steel vessels commonly known as ships or steel vessels that float upon the waters and are used in navigable streams and waters and for commercial purposes and steel vessels especially manufactured for the government to be used in war if such occasion should arise."

The "plant" consists of warehouses, trackage, machinery and equipment to be used primarily for building the above described vessels.

Against this property, despite the protests of appellee, the taxing authority of the city assessed taxes for the years 1936 and 1937.

This is the substance of the bill of complaint which the Chancellor refused to dismiss on motion of the appellants.

Upon the appeal from the order denying the motion to dismiss, there is presented again, for decision of this Court, an interpretation of the following amendment to the Constitution of Florida, adopted November 4, 1930.

"Section 12. For a period of fifteen years from the beginning of operation, all industrial plants which shall be established in this State on or after July 1, 1929, engaged primarily during said period in the manufacture of steel

vessels, automobile tires, fabrics and textiles, wood pulp, paper, paper bags, fiber board, automobiles, automobile parts, aircraft, aircraft parts, glass and crockery manufacturers and the refining of sugar and oils, and including by-products or derivatives incident to the manufacture of any of the above products, shall be exempt from all taxation, except that no exemption which shall become effective by virtue of this amendment shall extend beyond the year 1948.

"The exemption herein authorized shall not apply to real estate owned and used by such industrial plants except the real estate occupied as the location required to house such industrial plants and the buildings and property situated thereon, together with such lands as may be required for warehouses, storage, trackage and shipping facilities and being used for such purposes." Art. IX.

Obviously, the purpose of this amendment was to encourage and stimulate the construction and operation of industrial plants within the state of Florida by securing to those persons entering into such ventures relief from taxation for a period of fifteen years, from the beginning of operation, after July 1, 1929, but not beyond the year 1948; and, in determining whether the exemptions in the amendment apply to the construction of steel ships, we can well use the rule laid down in the case of City of Jacksonville v. Continental Can Co., 113 Fla. 168, 151 South. Rep. 488, where it was said by the Court:

"We should not employ that strict construction used in criminal law, but such a construction which will carry out the real intention of the people in making the instrument through their representatives." Text 490, 151 South. Rep.

Although we are not charged with passing on the wisdom of the policy of giving tax exemptions to foster construction of factories for various purposes, we cannot but bear

in mind, in considering the present controversy, how important it is that every incentive should be offered to those who would venture to construct manufacturing plants in the State, where comparatively few factories now exist. Doubtless the people were actuated by this desire for development in sanctioning the amendment, and it is this intent which bears great weight in interpreting the constitutional provision.

Without giving the above quoted amendment to the Constitution an unduly liberal construction, and following the rule heretofore announced in City of Jacksonville v. Continental Can Co., *supra*, that a strict construction should not be invoked but the real intention of the people carried out, the conclusion is reached that a plant for the construction of steel ships falls within the classifications enumerated.

There is no conflict in this conclusion and the one reached in the above cited case. In Jacksonville an attempt was made to tax property used in the manufacture of tin cans, and it was held that, inasmuch as those containers were made of $98\frac{1}{2}$ per cent. steel and $1\frac{1}{2}$ per cent. tin, they were steel vessels within the constitutional provision. It is evident that in opposing this contention, the city of Jacksonville, through counsel, argued that the amendment related to steel ships, but the only matter before the Court was whether or not the property used in the manufacture of *tin cans* should be exempt. . The exemption of plants used in the building of ships was not directly involved.

In that case, too, it appears that the fourth definition in Webster's New International Dictionary given to the word "vessel" is : "Any structure, esp. a hollow one, made to float upon the water for purposes of navigation; a craft for navigation of the water, often, specif., one larger than a common row boat; as, a war vessel; a passenger vessel."

As was suggested in City of Jacksonville v. Continental

Can Co., *supra,* there may be no connection between "paper bags," "fabrics and textiles," "fiber board," "crockery" and ships, but there is a definite relationship between ships of steel and "automobiles," "automobile parts," "aircraft" and "aircraft parts."

In this case, where the direct question is asked us,—Is property used in the manufacture of steel ships exempt under the provisions of the amendment?,—We definitely answer in the affirmative.

The chancellor was correct in his ruling, and it is affirmed.

TERRELL, C. J., and BUFORD, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.