J. M. Burnett, as Tax Collector, and W. S. Sparkman, as Tax Assessor, of Hillsborough County, v. American Welding & Tank Company.

197 So. 458
En Banc
Opinion Filed July 16, 1940

*John W. Cone* and *John J. Twomey,* for Appellants;
*J. Tom Watson,* for Appellee.

WHITFIELD, J.—The bill of complaint herein brought by the corporation to secure exemption of property from taxation under Section 12, Article IX of the Constitution, contains the following allegations:

"I.

"That the complainant is the owner of the following described lands situated in Hillsborough County, Florida, to-

wit: Lots 1 to 16 inclusive of Block 9, Second division of East Bay Park, Plat 7, page 23; and that the title to said property was owned by this complainant on the first day of July, 1929; and has been owned by this complainant ever since.

"II.

"That this complainant operates on said premises an industrial plant engaged now primarily in the manufacture of steel vessel, and that all of said premises have made up the location required to house such industrial plant, and the buildings and properties situated thereon, and the required warehouses, storage, trackage, and shipping facilities used in or for the operation of said plant; and that said industrial plant has been located on said premises, and operated thereon, ever since the first day of July, 1929, within the County of Hillsborough, City of Tampa, and State of Florida."

"III.

"Section 12 of Article IX of the Florida Constitution was adopted on November 4, 1930.

" * * * That prior to July 1, 1929, it (plaintiff) was manufacturing on the premises aforesaid, primarily, what was known as grove heaters, and doing general welding work of a varied and assorted character, and occasionally constructing soaking tanks for washing oranges in packing houses; but that during the year 1929, at sometime after July 1 thereof, the operations of its plant aforesaid, became centered upon the making of air tanks, liquefied gas tanks, storage tanks for gasoline and fuel oil, and all-steel pressure vessels; each of which such tanks and vessels was made of steel and is a vessel. From said time, to-wit: a date between July 1, 1929, and November 1, 1929, the business of this complainant became established as the manu-

facture and sale of such lastly described tanks and vessels; and this complainant alleges that on November 1, 1929, it became established as, and ever since said date, it has been engaged primarily, in the manufacture of. steel vessels containing more than 90% steel content, of the kind and character above described, to-wit: air tanks, liquefied gas tanks, storage tanks for gasoline and fuel oil, and steel pressure vessels. All of which are steel vessels, hollow or concave, for holding air and liquids, and each being a receptacle or container of some kind or character, and this is the business in which this complainant is now engaged, and expects to continue to conduct, upon the premises, and in the maufacture of the products—steel vessels—, aforesaid.

"IV.

" * * * That under the terms and provisions of Section 12, Article IX, of the Constitution of the State of Florida, the land and all property, real and personal, situated thereupon, are exempt from all taxes for a period of fifteen years from the beginning of operation of said industrial plant in the manufacture of such steel vessels as its primary business, provided said exemptions shall not extend beyond the year 1948. This complainant, up to and inclusive of the year 1937, from and inclusive of the year 1930, settled its County and State taxes on its real property aforesaid, by taking advantage of the provisions of what is known as The Murphy Tax Adjustment Law of 1937, now knowing of its exemption rights under the constitutional provision aforesaid; but for subsequent years of the exemption period provided in such Constitution, to-wit: from the year 1938 on to the end of such period, this complainant claims the benefit of the exemptions under the provisions of said Constitution, and alleges that the products and commodities manufactured by it are steel vessels as aforesaid, within

the meaning of such constitutional provision, and are all steel hollow or concave utensils for holding liquids, and hollow receptacles for the same purpose, and containers for the same purpose.

"V.

" * * * That contrary to, and in violation of the provisions of said Constitution, the Tax Assessor of Hillsborough County, Florida, for the years 1938 and 1939, has assessed real and personal property' tax against this complainant on its lands and industrial plant aforesaid, which assessments this complainant charges are illegal and void, and that it is entitled to have said assessments set aside and cancelled.

"VI.

" * * * That the defendant Tax Collector aforesaid, has had turned over to him for collection, the 1938 assessments of real and personal property taxes as assessed by said Tax Assessor, and will be delivered and have turned over to him for subsequent years, such taxes likewise, for collection, unless the same is enjoined by this court.

"VII.

" * * * That its industrial plant aforesaid, with all machinery, equipment and personal property situated on the above described premises, and the real estate thereof, are exempt from the payment of any and all taxes for the year 1938, and subsequent years, included within the constitutional period of exemption aforesaid; and complainant charges that any assessment and, or, collection of taxes on said property by the defendants aforesaid, is and would be a discrimination against this complainant, and is, and would be, in disregard of the constitutional exemption hereinbefore pointed out.

"VIII.

" * * * That the defendant Tax Collector aforesaid, unless restrained and enjoined by this Honorable Court, will proceed to enforce said illegal and unwarranted taxes from time to time, as is his custom with respect to tax collection and enforcement proceedings, unless restrained and enjoined therefrom by this Honorable Court; and the said defendant Tax Assessor will continue from year to year, for the remainder of said tax-exempt period, to assess taxes, real and personal, against the complainant, its industrial plant and real estate aforesaid, unless restrained and enjoined therefrom by this Honorable Court.

"IX.

" * * * That it has filed with the defendants aforesaid, to-wit: the Tax Assessor and Tax Collector of Hillsborough County, Florida, its protest in writing against the assessments and collections herein complained of, for the years 1938, and 1939, and the continuance thereof for the years embraced within the constitutional period of exemption aforesaid, but said officials refused to allow to this complainant, the Tax exemptions provided for in said constitutional provision, and claim that the properties of this complainant, real and personal, herein described, and its industrial plant aforesaid in the properties thereof, real and personal, are all subject to tax levies and assessments without any exemption under said constitutional provision whatso ever."

Appropriate relief was prayed.

An answer made issues of law and fact and evidence was taken by the chancellor whose findings contain the following:

"The evidence in this case discloses that prior to the

Fall of 1929, the plaintiff operated a machine shop or plant at its present location, engaged largely in the general acetylene welding and cutting, and in the manufacturing and repairing of breeching, stacks, pans and troughs, and to some extent the manufacture of steel tanks. This machinery was not suitable to meet competitive prices in the construction of steel tanks and containers.

"At that time new equipment was purchased consisting of electric welding machinery and apparatus suitable for construction of steel tanks and containers, and from that time henceforth the manufacture of steel tanks and containers of various kinds has been their primary or principal business.

"Before the purchase of the electric welding apparatus, a number of steel tanks used principally for storage tanks of gasoline filling stations and some for other uses, had been manufactured by the company, but this branch of the business did not exceed two per cent of the gross value of all products and business done by the company. After the installation of the electric welding machinery, the manufacturing of steel tanks and containers became the principal operation of the plaintiff. Other operations for the years beginning 1930 and including 1938, did not exceed one per cent of the total value of the products of the company.

"Though there was no change in location of the plant or ownership of the company, I am of the opinion that the evidence clearly requires the holding that the plaintiff's plant was converted to the primary business of manufacturing steel tanks or containers subsequent to the adoption of the constitutional amendment exempting them from the payment of taxes, and they are, therefore, entitled to the exemption."

The final decree contains the following:

"1.  That the real estate described in the Bill of Complaint, to-wit:  Lots 1 to 16 inclusive, of Block 9 of Second Division of East Bay Park, as shown by map recorded in Plat Book 7, page 23, Public Records of Hillsborough County, *with the exception of Lot 10, thereof,* has been used, and is being used by the complainant, for the operation by it thereon, of an industrial plant engaged primarily in the manufacture of steel vessels, and that all of said premises, excepting Lot 10 aforesaid, have made up the location required to house such industrial plant, and the buildings and properties situated thereon; and that said industrial plant for the construction of steel vessels, has been located on said premises and operated thereon, engaged primarily in the manufacture of such vessels, since January 1, 1930; and that plaintiff in this suit is the fee simple owner of said real estate and said industrial plant.

"2.  That it has been made to appear taxes have been assessed, both real and personal, against said real estate and industrial plant, by the County of Hillsborough and State of Florida, for the years 1938, and 1939, as well as previous years subsequent to 1930.  But the complainant seeks exemption from taxes on said property under Section 12, Article IX, of the Constitution of Florida, from 1938, inclusive, and not for the prior years coming subsequent to 1930.

"3.  It is further ADJUDGED, ORDERED AND DECREED, that all of the property, both real and personal, and industrial plant of the plaintiff, American Welding and Tank Co., situated on, being operated on, said property as aforesaid, be and the same hereby is decreed to be exempt from all taxes assessed against it by the County of Hillsborough and the State of Florida, from January 1, 1938, to the first

day of January, 1949, or until such time prior to the date last aforesaid, as the said industrial plant shall cease to be used primarily for the purpose of manufacturing steel vessels, save and except lot 10 of said real estate.

"4. That the complainant, American Welding and Tank Co., a corporation, is entitled to an injunction permanently enjoining the assessment and collection of any and all taxes on said real estate and industrial plant, and property hereinbefore described and referred to, for the period of time hereinbefore stated. And such injunction be, and the same hereby is granted against the Tax Assessor of Hillsborough County, W. S. Sparkman, and against the Tax Collector of Hillsborough County, J. M. Burnett, and their successors in office, over the period of time aforesaid.

"5. That all assessments for taxes made and outstanding against the above described real estate and industrial plant, save and except Lot 10 as aforesaid, constitutes a cloud on the title of said property, and the same is hereby cancelled.

"DONE AND ORDERED at chambers in the City of Tampa, on this 21st day of December, A. D. 1939.

"L. L. Parks, Judge."

The defendant county officers appealed and assigned errors on the findings and decree.

Appellants make the following "statement of question involved: "Is a corporation, whose primary business subsequent to July 1st, 1929, has been the manufacture of steel tanks, entitled to exemption from taxation of its real and personal property, used in said business, under Article IX, Section 12, of the State Constitution, when said corporation, on the same site, prior and up to July 1st, 1929, manufactured similar steel tanks as a part of its business?"

The provisions of the Constitution referred to above to be interpreted are:

"Section 12. For a period of fifteen years from the beginning of operation, all industrial plants which shall be established in this State on or after July 1st, 1929, engaged primarily during said period in the manufacture of steel vessels, automobile tires, fabrics and textiles, wood pulp, paper, paper bags, fiber board, automobiles, automobile parts, aircraft, aircraft parts, Glass and Crockery Manufacturers and the refining of sugar and oils, and including by-products or derivatives incident to the manufacture of any of the above products, shall be exempt from all taxation, except that no exemption which shall become effective by virtue of this amendment shall extend beyond the year 1948.

"The exemption herein authorized shall not apply to real estate owned and used by such industrial plants except the real estate occupied as the location required to house such industrial plants and the buildings and property situated thereon, together with such lands as may be required for warehouses, storage, trackage and shipping facilities and being used for such purposes.

"Approved May 15, A. D. 1929." Sec. 12, Art. IX, Constitution of Florida, adopted Nov. 4, 1930.

"In construing and applying provisions of a constitution the leading purpose should be to ascertain and effectuate the intent and object designed to be accomplished.

"In determining the meaning of words in a constitution they should be taken not separately, but in conjunction with other words, and should be considered in the light of the purpose intended as shown by the provisions as an entirety. When words may import different meanings they should have the meaning and effect designed to be given them as

appears by a fair consideration of the whole context in view of the object intended to be accomplished.

"Every word of the State Constitution should be given its intended meaning and effect; and essential provisions of a constitution are to be regarded as being mandatory." Headnotes 5, 6, 7 of State *ex rel.* West v. Butler, 70 Fla. 102, 69 So. 771.

The purpose of the quoted provision of the Constitution is to encourage the establishment and operation of industrial manufacturing plants in this State, without discriminating between those "which shall be established in this state *on or after* July 1, 1929," when and while such industrial plants are *engaged primarily* in the manufacture of stated articles of industry during the specified period of time. The inducement offered is exemption from taxation of specified property used in such plants during the stated period of time. Practical non-discriminating application of the provisions of the organic section, within its own limitations, was manifestly intended, with a view to enhancing the general welfare of the State, by encouraging the establishment on or after July 1, 1929, of altered or enlarged industrial plants that had already been operated in the State but not, prior to July 1, 1929, *engaged primarily* in the manufacture of any of the stated articles, as well as the establishment of new industrial plants in the State on or after July 1, 1929, engaged primarily in the manufacture of the stated articles. See City of Jacksonville v. Continental Can Co., 113 Fla. 168, 151 So. 488; City of Tampa v. Tampa Shipbuilding & Engineering Co., 136 Fla. 216, 186 So. 411.

In order to effectuate the purpose and express commands of the first paragraph of Section 12, Article IX, of the Florida Constitution, each and every of the words, "established in this State on or after July 1, 1929, engaged pri-

marily" must be given its intended force and effect. The organic provision relates to industrial plants established in this State *on,* as well as *after,* July 1, 1929, when and while they are "engaged primarily in the manufacture of" any one of the stated articles, on or after July 1, 1929, within the stated period of time.

For an industrial plant to be *"established on"* July 1, 1929, it must have been in existence before that day. The tax exemption applies only when and while such plant is *"engaged primarily"* in the manufacture of designated articles and incidentals and during the stated period of time, whether established on or after July 1, 1929. No tax exemption shall extend beyond the year 1948.

The words, "all industrial plants *which shall be established* in this State on or after July 1st, 1929, *engaged primarily,"* etc., should be considered together, and so interpreted as to make all the words cooperate to express the meaning and intent, and to effectuate the purpose of the organic section. The industrial plants referred to are those which shall be established in this State *on or after July 1, 1929, and engaged primarily* in the manufacture of steel vessels and other specifically designated products. Tax exemption applies to property as authorized by the organic section and used in such industrial plants *on or after July 1, 1929,* as shall be established in this State by being put in condition to be, and on or after July 1, 1929, actually are, *engaged primarily* in the manufacture of steel vessels, etc., during the stated periods of time.

As used in the organic provision, the word, "established" means put in condition to be. "engaged primarily" in the manufacture of steel vessels, etc.; and the words "engaged primarily * * * in the manufacture," etc., mean engaged principally, engaged chiefly, engaged predominantly, in the manufacture, etc.

Appropriate allegations and sustaining evidence show that appellee's industrial plant was in existence prior to July 1, 1929; but it was not then suitably constructed or equipped to be, and was not then, "engaged primarily" in the manufacture of steel vessels, etc. It is also fully shown that subsequent to July 1, 1929, the existing industrial plant was so constructed, enlarged and equipped with machinery and incidentals as to make it suitable for, and it was thereby established after July 1, 1929, to be, and thereafter "engaged primarily" in, the manufacture of steel vessels. Tax exemptions exist for not more than fifteen years from the beginning of operation, on or after July 1, 1929, only when and while "engaged primarily" in the manufacture of any of the articles stated in the section of the Constitution; all tax exemptions to end with the year 1948, and none for more than fifteen years.

This interpretation and application of the controlling provisions effectuate the purpose of the organic section and should operate to avoid any discrimination for or against those constructing entirely new industrial plants and those having existing industrial plants in this State not "engaged primarily" in the stated manufacture, but which by additions, reconstruction, reconditioning, new or different machinery, equipment, facilities, etc., may be and are converted into industrial plants that may thereby on or after July 1, 1939, be established in this State to be "engaged primarily" in the manufacture of at least one of the articles enumerated or referred to in Section 12, Article IX, Constitution. This does not conflict with the decision in City of Tampa v. Tampa Shipbuilding & Engineering Co., 136 Fla. 216, 186 So. 411, 412.

The quoted section of the Constitution of Florida does not merely exempt additions to existing industrial plants,

as in the Louisiana case of Mattingly v. Vial, Sheriff (La.), 190 So. 313.

The findings of the chancellor, amply supported by the evidence, in effect are that plaintiff had an industrial plant which prior to July 1, 1929, was not "engaged primarily" in the manufacture of steel vessels, though it did manufacture steel tanks classed as steel vessels, but such manufacture of steel vessels was not more than two per cent of the gross value of all products of the plant; and that subsequent to July 1, 1929, the plaintiff added to its plant and equipment, and thereafter the manufacture of steel tanks and containers classed as vessels has been the primary or principal or chief output in value and importance of the manufacturing business at the plant located on the described lands in this State, the manufacture of other articles than steel vessels at such plant from 1930 to 1938 being about one per cent of the total manufactured output of the plant.

The record clearly shows that while appellee's industrial plant manufactured steel tanks classed as vessels as a small fractional part of its business before July 1, 1929, yet after that time the plant, its machinery and equipment, were so changed and added to as to establish an industrial plant sufficient to engage in, and which is engaged primarily in, the manufacture of steel vessels within the intendments of the quoted constitutional provision; and that the property of the appellee, as described and limited in the quoted decree of the chancellor, is entitled to be exempted from taxation by the taxing officials, under Section 12, Article IX, of the Constitution of Florida, while such industrial plant is so engaged primarily in the manufacture of steel tanks and containers being classed as steel vessels, during the remainder of the period of time as stated and limited in the organic section.

Rights of the holders of county, district and municipal bonds issued prior to, the adoption of quoted Section 12, Article IX, November 4, 1930, are not presented in this case, so the principles announced in Folks v. County of Marion, 121 Fla. 17, 163 So. 298, need not be here discussed.

As Section 12, Article IX, of the Florida Constitution is to be interpreted according to its own purpose and intent, it is not necessary to here discuss cited decisions upon organic or statutory provisions in other States which are more or less unlike the one here considered.

The decree appealed from is affirmed.

TERRELL, C. J., BROWN, BUFORD and CHAPMAN, J. J., concur.

THOMAS, J., concurs specially.

THOMAS, J. (concurring specially).—Because of the decision in City of Jacksonville, et al., v. Continental Can Co., Inc., 113 Fla. 168, 151 So. 488, I concur in the conclusion reached by the Court.