FLEISCHER STUDIOS, INCORPORATED, a Florida Corporation, v. LAMAR PAXSON, CHARLES H. CRANDON, CECIL A. TURNER, N. P. LOWRY, J. D. REDD, as and Constituting the Board of County Commissioners in and for Dade County, Florida; J. N. LUMMUS, JR., as Tax Assessor of Dade County, Florida, and HAYES WOOD, as Tax Collector of Dade County, Florida.

2 So. (2nd) 293
En Banc
Opinion Filed May 13, 1941

*Aronovitz & Goldstein,* for Appellant;
*Hudson & Cason,* for Appellees Lamar Paxson,

Charles H. Crandon, Cecil A. Turner, N. P. Lowry and J. D. Redd, as and constituting the Board of County Commissioners in and for Dade County, Florida, and *Stapp, Ward & Ward,* for Appellee J. N. Lummus, Jr., as Tax Assessor of Dade County, Florida, and *Melbourne L. Martin* for Appellee Hayes Wood, as Tax Collector of Dade County, Florida, *Loftin, Calkins, Anderson & Scott,* as *Amicus Curiae.*

WHITFIELD, J.—The appeal herein was taken from a decree dismissing without prejudice to plaintiff a bill of complaint in equity, seeking injunctive relief from taxation of property claimed under added Section 14, Article IX, Constitution of Florida.

The power to impose and collect taxes upon persons and property is an attribute of sovereignty; and it is essential to the maintenance and operation of government. The exercise of the sovereign power of taxation in imposing taxes and in exemptions from taxation is regulated by the Constitution and by valid statutes, the subjects of taxation and the nature and extent of the tax being determined by State law, subject to the dominant applicable Federal Law. Long v. St. John, 126 Fla. 1, 170 So. 317; Gray v. Winthrop, 115 Fla. 721, 156 So. 270.

The State Constitution provides that no tax shall be levied *except in pursuance of law.* Sec. 3, Art. IX.

"The Legislature shall provide for a *uniform and equal rate of taxation,* . . . and shall prescribe such regulations as shall secure a *just valuation* of all property, both real and personal, excepting such property as may *be exempted by law* for municipal, educational, literary, scientific, religious, or charitable purposes." Sec. 1, Art. IX.

"The property of all corporations . . . whether here-tofore or hereafter incorporated, shall be subject to taxation unless such property *be held and used exclusively* for religious, scientific, municipal, educational, literary or charitable purposes." Sec. 16, Art. XVI. See also Sec. 1, Art. X.

Section 1, Article IX, authorizes only specific classes of property to be exempted *by law* for stated purposes (Maxcy, Inc., v. Federal Land Bank of Columbia, 111 Fla. 116, 150 So. 248, 151 So. 276) while Section 16, Article XVI, may be self-executing and cannot be changed by legislative enactment. Lummus v. Florida-Adirondack School, Inc., 123 Fla. 810, 168 So. 232; Lummus v. Miami Beach Congregational Church, 142 Fla. 657, 195 So. 607.

Added Section 7, Article X, adopted November, 1934, provides:

"There shall be exempted from all taxation, other than special assessments for benefits, to every head of a family who is a citizen of and resides in the State of Florida, the homestead as defined in Article X of the Constitution of the State of Florida up to the valuation of $5,000.00; provided, however, that the title to said homestead may be vested in such head of a family or in his lawful wife residing upon such homestead or in both. (Additional Section, House Joint Resolution 20, Acts 1933, adopted at general election, November 6, 1934)." See also amended Sec. 7, Art. X, adopted Nov., 1938, and amended Sec. 9, Art. IX, 1940; Perm. Supp. 1940, C. G. L., pp. 412, 418. See also amended Section 11, Article IX, Constitution.

Added Section 7, Article X, by inmplication amended

the provisions forbidding exemption of homesteads from taxation contained in Section 1, Article X, and exempted from all taxation except special assessments for benefits, homestead real estate up to the valuation of $5,000.00. Such organic exemption of homesteads from taxation, thereby created a new State policy as to exemptions of homestead real estate, by adding to previous stated exemptions from forced sale, exemptions from all taxation except special assessments for benefits to a stated extent, later extended by the 1938 amendment to Section 7.

Original added Section 7, Article X, was held to be valid except as to statutory contract rights of creditors acquired prior to the organic amendments, when county, municipal and district bonds had been legally issued and sold for duly authorized purposes pursuant to statutory requirements that taxes should be annually levied and collected upon all the taxable property in the taxing unit sufficient to pay the bonds, and such subsequent exemption of homesteads, being a large percentage of the taxable property, would materially impair the obligation of the public bond contract in violation of the contract clause of the Federal Constitution, where no adequate and certain and binding provision had been made and carried into effect and continued for supplying ample funds for meeting the contract obligations, as had been provided by law when the bond contracts were issued and sold. See Gray v. Moss, 115 Fla. 701, 156 So. 262; Gray v. Winthrop, 115 Fla. 721, 156 So. 270; Folks v. County of Marion, 121 Fla. 17, 163 So. 298; State v. Port of Palm Beach District, 121 Fla. 746, 164 So. 851; State v. Carey, 121 Fla. 515, 164 So. 199; State v. Boring, 121 Fla. 781, 164 So. 859.

In 1930 and 1934 the State policy of exempting property from all ad valorem taxation was by constitutional amendments extended with definite limitations to what is generally called "new industries" established in this State, the purpose being to encourage new enterprises to increase the business activities of the State with consequent additions to the population and the development and utilization of the natural resources of the State for the general welfare.

The organic amendments are as follows:

"Section 12. For a period of fifteen years from the beginning of operation, all industrial plants which shall be established in this State on or after July 1, 1929, engaged primarily during said period in the manufacture of steel vessels, automobile tires, fabrics and textiles, wood pulp, paper, paper bags, fiber board, automobiles, automobile parts, aircraft, aircraft parts, glass and crockery manufacturers and the refining of sugar and oils, and including by-products or derivatives incident to the manufacture of any of the above products, shall be exempt from all taxation, except that no exemption which shall become effective by virtue of this amendment shall extend beyond the year 1948.

"The exemption herein authorized shall not apply to real estate owned and used by such industrial plants except the real estate occupied as the location required to house such industrial plants and the buildings, and property situated thereon, together with such lands as may be required for warehouses, storage, trackage and shipping facilities and being used for such purposes. (Additional Section, Senate Joint Resolution 89, Acts 1929; Adopted at general election, November 4, 1930.)" Added Sec. 12, Art. IX,

Fla. Constitution of 1885; 1936 Perm. Supp. to C. G. L., p. 3415.

"Section 14. For a period of fifteen years from the beginning of operation, motion picture studios and plants which shall be established in this State on or after July 1st, 1933, including all lands, buildings and chattels utilized in connection therewith, and all raw materials going into the finished products of such studios and plants, as well as the finished products or films, shall be exempt from all ad valorem taxation, except that no exemption which shall become effective by virtue of this amendment shall extend beyond the year 1943.

"The exemption herein authorized shall not apply to real estate owned by such motion picture studios and plants except the real estate occupied as the location required to house such motion picture studios and plants and other buildings incidental to the operation of such studios and plants, together with such lands as may be required for housing officers and employees, and for warehouses, laboratories, cutting rooms, projection rooms, storage, trackage, shipping facilities, sets and locations. (Additional Section, House Joint Resolution 1441, Acts 1933; adopted at general election, November 6, 1934.)" Added Sec. 14, Art. IX, Fla. Constitution of 1885; 1936 Perm. Supp. to C. G. L., p. 3416.

The organic amendments exempting homestead real estate up to the assessed value of $5,000.00 from all taxation except special assessments for benefits, covered a considerable percentage of the long previous taxable real estate in all the counties of the State; the exemption is continuous, and is designed to encourage

the acquisition of homes in this State without reference to attracting new industries.

The 1930 and 1934 amendments, added Sections 12 and 14, Article IX, are primarily designed to induce *new* enterprises and industries to be established in different parts of the State where they could be successfully operated for the growth, development and general welfare of the State; the period of exemption is limited, and the property covered by the exemptions will naturally be in a few counties of the State; and a relatively small percentage of the taxable property in the State will be exempted from all taxation under Section 12 and from all ad valorem taxation under Section 14 of Article IX of the State Constitution.

Section 12 quoted above has been judicially construed and applied in the following cases: City of Jacksonville v. Continental Can Co., 113 Fla. 168, 151 So. 488; City of Jacksonville v. The Glidden Co., 124 Fla. 690, 169 So. 216; City of Tampa v. Tampa Shipbuilding & Engineering Co., 136 Fla. 216; 186 So. 411; Burnett v. American Welding & Tank Co., 143 Fla. 740, 197 So. 458. See also National Container Corp. v. State, 138 Fla. 32, 189 So. 4.

This suit in equity is brought by a Florida corporation to enjoin ad valorem taxation by county officials of property claimed to be exempt from all ad valorem taxation under the constitutional amendment of 1934 quoted above as being added Section 14 of Article IX. The court sustained motions of the defendants to dismiss the bill of complaint and the amendment thereto going to the sufficiency of the allegations to warrant the relief prayed, and the plaintiff declining to further amend, the bill of complaint was dismissed without prejudice to plaintiff. Appeal was taken.

Plaintiff below, appellant here, presented in its brief the following summary of the allegations of the bill of complaint:

". . . That Plaintiff was the fee simple owner of described real estate in Dade County, Florida, and has on said described property a building and personal property utilized for the production of motion pictures; that the real estate has been assessed for the year 1939, the first year of operation of said motion picture studio at a valuation of Twenty-Seven Thousand Five Hundred Dollars ($27,500.00), and the personal property has been assessed for the same year at a valuation of Fifty Thousand Dollars ($50,000.00); that prior to the year 1939, various bonded indebtednesses were incurred by the governmental agencies and that each of said bonds were general obligation bonds of the various taxing units; that debt service tax has been assessed against the real and personal property of Plaintiff contrary to the provisions of Section 14, Article IX of the Constitution of the State of Florida; that the Tax Assessor has informed Plaintiff that similar taxes would be fixed and levied for the year 1940; that prior to 1938 the motion picture studio and plant were located in New York and that relying on said constitutional amendment, the said motion picture studio and plant was moved to Dade County, Florida; that the assessed valuation of property in Dade County, Florida, is not greater than the assessed valuation at the time the above mentioned bonds were issued; that the net tax roll available for appropriation has increased from Seventy-four Million One Hundred Thousand Dollars ($74,100,000.00) to Ninety-one Million Sixty-Seven Thousand Four Hundred Twenty-Six and 80/100 Dol-

lars ($91,067,426.80), and that therefore it will not be necessary to tax Plaintiff's property in order to raise money to pay the above stated bonded indebtedness; that there is more than sufficient property in Dade County at the present millage to meet the said bonded indebtedness, and that as a matter of fact from surplus funds the County has purchased county bonds in approximate amount of Three Hundred Thousand Dollars ($300,000.00) prior to due date; that there was never anticipated by the holders of the various bonds that the real estate involved would be increased in value to the extent the same was increased by the construction of the motion picture studio, nor that personal property with the valuation for taxation purposes of Fifty Thousand Dollars ($50,000.00) would be located upon said property.

". . . That when Plaintiff moved its motion picture studio from New York to Dade County, Florida, it brought with it various employees from the State of New York who have become *bona fide* residents of Dade County, Florida; that as a direct result thereof taxable property in Dade County, Florida, for debt service of the bonds heretofore mentioned has substantially increased; that the taxes levied against the property of the employees of Plaintiff brought from New York to Dade County, Florida, is greater than the amount of taxes levied against Plaintiff's motion picture studio and plant, and that Plaintiff thereby has created an additional fund for the payment of the bonds, which was not in existence prior to the time Plaintiff moved its motion picture studio and plant to Dade County, Florida, and would not have been in existence had not the Plaintiff so moved its motion picture studio and plant and personal property.

". . . That the Plaintiff's property, the buildings thereon and the personal property contained therein are being used for scientific purposes; that the making and production of motion pictures of the type produced by Plaintiff is scientific in its *nature* and requires constant scientific research, and Plaintiff should therefore be exempt from all taxation under the provisions of Section 1, Article IX of the Constitution of the State of Florida.

"The bill contained a . . . prayer for the cancellation of taxes against Plaintiff's property heretofore assessed and for an order restraining the collection, levy and assessment of any taxes against Plaintiff's property. . . .

"By stipulation Plaintiff amended its bill of complaint to allege that none of the personal property of the Plaintiff was in Dade County, Florida, at the time of the creation of the various bonded indebtednesses, so that at no time was said personal property security for the bonds, and that some of the said personal property was removed from New York to the State of Florida and additional personal property was acquired after Plaintiff located in Dade County, Florida.

". . . The motions to dismiss the bill of complaint . . . were directed to the bill of complaint and the amendment thereto.

"After argument of counsel the lower court entered an order dismissing the bill of complaint and the amendments thereto.

"Plaintiff appeals from the decision of the lower court dismissing the original bill of complaint and the amendment thereto."

Allegations of facts contained in the bill of complaint were admitted by the motions to dismiss made

by all of the defendants. The essential question to be adjudicated here is whether the allegations of the bill of complaint admitted by the motions to dismiss, warrant the injunctive relief prayed.

In Boatright v. City of Jacksonville, 117 Fla. 477, text page 506, 158 So. 42, it is said:

"If the Legislature duly provides sufficient revenues from other sources of taxation to actually take the place of the revenues that may be raised by continuing the existing *ad valorem* taxation on the homestead properties that are provided by added Section 7 of Article X to be specifically exempted from all taxation so far as is constitutionally possible under the limitations of the applicable Federal constitutional provision prohibiting the impairment of the obligation of contracts by the enactment of any State law or State constitutional amendment passed after the obligation was created, and payment of outstanding indebtedness be in fact realized from such other sources of taxation devised by the Legislature for the purpose of completely relieving homesteads from debt service taxes as well as other taxes, the bond obligation will become discharged and satisfied *pro tanto,* even though liability of the exempted property to continue taxation from the undischarged and unsatisfied portion of such statutory contract obligations will continue in force until the original statutory obligation of the debt is fully satisfied by actual payment of the same, whether by the originally pledged revenues or otherwise as the Legislature shall provide as a substitute therefor." See also State v. Boring, 121 Fla. 781, 164 So. 859; County Comm'rs. v. King, 13 Fla. 451.

The quoted judicial statement had reference to added Section 7, Article IX, Florida Constitution, exempting

homesteads from taxation; but it is as applicable to this case under added Section 14, Article IX. If the taxable property of a governmental or taxing unit is or indubitably becomes by growth or increase or otherwise, of such annual tax producing value as to meet the tax obligations of the unit, and the exemption does not clearly impair the obligation of statutory contract rights in violation of the Federal Constitution, the organic exemption may be enforced; for a tax exemption made by the State Constitution is controlling unless such exemption operates to violate some paramount provision of Federal law. Gray v. Moss, 115 Fla. 701, 156 So. 262.

In this case the allegations of the bill of complaint, admitted by the motions to dismiss made by county officers, entitle plaintiff to the exemptions from taxation claimed. No bondholder or other party asserts a violation of any Federal law by the operation of the tax exemption claimed under added Section 14, Article IX, of the Florida Constitution; and on the showing made by the pleadings the contract clause of the Federal Constitution is not violated by the organic exemption, so the latest provision of the State Constitution is the controlling law on this record.

If tax exemption of property, real or personal, conferred by the State Constitution does not operate to violate Federal Law, it may be immaterial whether such exempted property was or was not subject to taxation to pay contract obligations of taxing units when the obligations were incurred. Organic exemptions from taxation qualify existing taxing power conferred by the Constitution when no dominant Federal law is thereby violated. Every case must be determined on its own essential facts and the controlling

law applicable thereto. When a tax exemption is claimed, it must be shown that the dominant law is not violated by the claimed exemption.

Reversed and remanded for appropriate proceedings.

BROWN, C. J., TERRELL, BUFORD, CHAPMAN, and ADAMS, J. J., concur.